(Decided May 31st, 1859.)

---

# ELIZABETH COOKE'S LESSEE *vs.* MARY ANN KELL and Others.

By the *English* construction of the *Statute of* 27*th Elizabeth,* the mere execution of a voluntary deed raises a *conclusive* presumption of fraud, as against subsequent purchasers for value.

By the *American* construction of this statute, a subsequent sale, *without notice,* is *presumptive* evidence of fraud, which throws on those claiming under the voluntary deed the *onus* of proving, that it was made *bona fide.*

But when the subsequent purchaser *has notice* of the prior voluntary deed, no such presumption of fraud arises, and such notice need not be *actual.*

*Constructive* notice, furnished by the *recording* of a voluntary deed, under the registry laws of this State, is sufficient to bind subsequent purchasers, in the *absence of actual fraud.*

The registry laws of this State were designed to, and do, give notice to *all the world,* so that there may be no deceit practiced upon any one; if they have not this effect they are of no use whatever, for without registration deeds are binding *inter partes.*

An instruction to the jury, "That, by the *deed* of 1792, the grantor conveyed to the grantees, therein named, the property therein described," &c., is defective in *assuming* the *existence* of the deed of 1792.

Facts *sufficient* to authorize the jury to find therefrom, that a voluntary conveyance was not *bona fide,* but *fraudulent* and *void,* must amount to some *pointed evidence* of actual fraud in its execution; such evidence is necessary in order to establish *fraud in fact.*

APPEAL from the Superior Court of Baltimore City.

*Ejectment* for a lot of ground, forty-one feet front and one hundred and fifty-nine deep, on York street, in the city of

Cooke's Lessee.*vs.* Kell, *et al.*

Baltimore, being lot No. 17, and part of "Todd's Range," brought on the 29th of August 1850, by the appellant against the appellees. Plea *Non Cul.*

*Exception.* The plaintiff proved, that Joseph Bankson, then of the city of Baltimore, was, on the 14th of May 1792, the owner in fee of the lot in question, and on that day executed the following deed therefor, which was, on the *same day, duly recorded*, in the land records of Baltimore county.

By this deed Joseph Bankson, the grantor, in consideration of *natural love and affection*, and of five shillings, current money, conveyed the property to his three children, Harriet Giles Bankson, Joseph Bankson and Elizabeth Bankson, and their heirs, as tenants in common; reserving, however, the use and occupation of the property to himself and his wife, Hetty Bankson, for and during their natural life or lives, in case the wife should survive, and no longer, and from and after the decease of the grantor and his wife, then the property to revert to and become the sole property of the said children, the grantees, and their heirs, as tenants in common.

The plaintiff further proved, that Joseph Bankson, the grantor in this deed, died in the city of Philadelphia about the year 1806, and his widow, Hetty Bankson, survived him and died in 1843; that Elizabeth Cooke, the lessor of the plaintiff, is the same person as Elizabeth Bankson, one of the grantees in the above deed, having intermarried with a certain John S. Cooke, who is now dead, or believed to be so; that the other grantees, mentioned in this deed, both died intestate and without issue, the one about the year 1800, and the other about the year 1812; that these three were all the children the said Joseph Bankson had at the date of this deed, but he afterwards had five others, some of whom died intestate and without issue, and some are now living.

The defendants then proved, that the lot in question remained in possession of Joseph Bankson after the deed of May 14th, 1792, until the 17th of February 1795, and that on that day he duly executed, and for a *full and valuable consideration*, a conveyance of the same to Daniel Diffenderffer, the wife of said Bankson, to whom a life estate had been reserved by the

deed of the 14th of May 1792, relinquishing, in due form of law, her dower in the same; that Diffenderffer at once took possession of the lot and improved it by building thereon a valuable brick dwelling house, in which he continued to reside, claiming title to the same under said deed of 1795, until his death, about the year 1809 or 1810; that Diffenderffer, by his last will, duly executed, devised the lot to his wife, Elizabeth Diffenderffer, who continued in possession thereof from her husband's death until her death, in 1832 or 1833, after which the same was sold by a trustee appointed for that purpose, and that the title of Diffenderffer and wife, by legally executed and acknowledged mesne conveyances, and lastly, by a deed from Henry Dorsey, became vested in Thomas Kell, who paid for the same a valuable and full consideration, viz: $7000, and remained in possession of the same from 1833 to his death, in 1846, and the defendants, who are his widow and child and heirs at law, after him till this time.

The defendants also further proved, by A. W. Thompson, a conveyancer, that he had examined the land records of Baltimore county, from 1759 to 1792, and that he found, that Joseph Bankson, the grantor in the deed of the 14th of May 1792, had, before that date, been the owner of other real estate, but had, at different periods, parted with the same, and did not appear by the said land records to be, at the date of said deed, the owner of any other real or leasehold estate than that conveyed thereby. They also gave in evidence, that said Bankson seemed to be a needy man, and then produced the deposition of Mrs. Howser, taken by consent, who deposed, that she was about seventy-five years of age; that she knew Joseph Bankson, deceased, by sight,—lived two squares from him,—when she knew him he lived in a two-story frame house, situated upon the lot once owned by Daniel Diffenderffer and afterwards by Thomas Kell; that from his appearance, when she last knew him, he was getting pretty low in the world; that before that time she always heard he had been very well off, but that it was about the time that he left the place where he lived, as before stated, that he was getting to be reduced in circumstances; deponent was about fourteen

years old at the time of which she speaks, when she last knew said Bankson; she formed her judgment of his being in reduced circumstances from the appearance of himself and family; he had three children, when she knew him, and when he moved away, two boys and a girl; deponent was married when she was about eighteen years of age, and Bankson had moved away long before, but precisely when she does not know; he was a man of good character as far as she knew; she did not know of any indebtedness of his, or that he was indebted at all; she did not know whether he owned the house or not, and knew nothing about his property.

Lloyd Bankson, a son of the said Joseph Bankson, and a witness for the plaintiff, on cross-examination said: "I do not know when my father first came into possession of the property mentioned in the deed of 1792. To the best of my recollection, I first heard of its having belonged to my father in 1814; I do not remember of hearing that my father had sold the property, but only of hearing that Diffend'erffer, or some other party was in possession illegally. This I first heard about the year 1814. I do not remember of hearing of the deed of 1792, until a few years ago, when it was brought to my notice. Before that, I heard that some person was illegally in possession of our property. This I heard as far back as 1814. I have no knowledge of any measures taken by any of the children of Joseph Bankson, to notify Diffenderffer of their claim under the deed of 1792, except that John P. Bankson, in 1814, as I then heard, had employed Mr. Williams, a lawyer of Baltimore, to bring suit for us. Joseph Bankson lived in Philadelphia, from four to six years previously to his death. He had lived previously in Maryland. I have heard of his living in Kent county. He also lived in Baltimore. I don't know when he went to Kent county, or how long he lived there. At the time of his death, he was, as I have heard, a white smith, and was about to commence the hardware business. He left no property to my knowledge. He made no will to my knowledge. There was no administration on his estate to my knowledge."

The plaintiff then, on the whole evidence, asked an instruction to the jury in substance as follows:

That by the deed of the 14th of May 1792, Joseph Bankson conveyed to grantees therein named, the property therein described, in fee, subject to the life estate in and to the same, of the grantor and his wife and of the survivor of them, and if the jury find from the evidence, that said Joseph Bankson died in 1806, and his widow in 1843, that the right of action to recover possession of said lot of ground, thereupon first accrued to the grantees in said deed named, and their representatives, and that the deed of 1795, from said Bankson to Diffenderffer, was not sufficient to avoid said conveyance of 1792, although they may find, that the said deed of 1795, was for full value, and that of 1792, voluntary, and for no other consideration than that stated therein, provided the jury shall further find, that said last mentioned deed was duly acknowledged and recorded in the records of Baltimore county court, on the 14th of May 1792.

The defendants then, on the same evidence, asked two instructions to the jury, in substance as follows:

1st. If the jury find, that the deed from Joseph Bankson, of the 14th of May 1792, was a voluntary conveyance, and for no other consideration than that stated in it, that then the sale by him in 1795, of the same property to Diffenderffer, and the execution of the deed therefor to Diffenderffer, of the 17th of February 1795, if the jury shall find such sale and deed, and that the same was for a valuable consideration, and without actual notice by Diffenderffer of said deed of the 14th of May 1792, is presumptive evidence, that said deed of the 14th of May 1792, was fraudulent and void.

2nd. If the jury shall find, that the said deed of the 14th of May 1792, was only for the consideration therein stated, and shall also find that the grantor, Bankson, had antecedently thereto conveyed away all his other property, and was at the time of the execution of said deed of the 14th of May 1792, the owner and possessor of no other property, and if they shall find, that his wife, who had a life estate under that deed, joined by a relinquishment of dower in the deed to Diffenderffer, of

60      v. 13.

the 17th of February 1795, with knowledge that the same conveyed the title to the grantee, and that she lived till 1843, and that the three children, the grantees in said deed of 1792, were then infants and unable to maintain themselves, and that said Bankson never had any property afterwards, other than the purchase money received from Diffenderffer, from the said sale to him of said lot, or what he may have procured by means thereof, and that neither said Bankson, nor his wife, or any one else, ever communicated to Diffenderffer the existence of said deed of 1792, and that neither he (Diffenderffer) nor Thomas Kell, under whom the defendants claim, ever had actual knowledge of the same until long after the deed to said Kell by Henry Dorsey, of 1833, offered in evidence by the defendants, (if the jury find such deed, and that the same was for full value,) and the jury shall also find, that said Diffenderffer, and those claiming under him, held said property from 1795 to the present time, adversarily under said deed to Diffenderffer of 1795, and that said Cooke never did set up title to the same under the said deed of 1792, that then the jury may find that said deed of the 14th of May 1792, was not *bona fide* but fraudulent and void.

The court (FRICK J.,) refused the plaintiff's prayer, and granted those of the defendant. To this ruling the plaintiff excepted, and the verdict and judgment being in favor of the defendant, appealed.

*Note.* By agreement of counsel the exception was signed by Judge Lee, and the appeal was taken in the same manner as if the exception had been regularly signed and sealed before the jury was discharged, by Judge Frick, before whom the case was tried.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*John P. Poe* for the appellant.

The questions arising in this case depend, for solution, upon the construction and effect of the statute of 27 *Eliz.*, entitled, "An act against covinous and fraudulent conveyances," under

the system of registering deeds which prevails in this State. For the appellant it is contended:—

1st. That this statute does not condemn voluntary conveyances as against subsequent purchasers for value, merely because they are *voluntary*, but only condemns such as are fraudulent and covinous. 6 *Md. Rep.*, 235, *Mayor & C. C. of Balto. vs. Williams.*

2nd. If a subsequent purchaser for value has *notice* of the existence of a prior voluntary deed, his deed cannot take precedence over the voluntary one, unless there be *fraud in fact*, in the latter, which the law never *presumes*, but which must be *proved*. 6 *Md. Rep.*, 235. 4 *McCord*, 294, *Hudnal vs. Wilder.* 22 *Eng. Law & Eq. Rep.*, 20, *Mill vs. Hill.* 1 *Robinson*, 500, 540, *Bank of Alexandria vs. Patton.* 5 *Pet.*, 280, *Cathcart vs. Robinson.* 14 *Mass.*, 137, *Ricker vs. Ham.* 18 *Pick.*, 131, *Clapp vs. Leatherbee.* 3 *Wend.*, 411, *Wadsworth vs. Havens.* 5 *Watts*, 378, *Foster vs. Walton.*

3rd. The notice to the subsequent purchaser, which will postpone his deed, may be either *actual* or *constructive*, and the due *recording* of the prior voluntary deed is *constructive* notice of its existence to *all the world*, and in such cases, in the absence of *actual fraud proved*, the common law maxim of *caveat emptor* must be rigidly applied. Such was the express decision of *Chief Justice Le Grand* in the case of *Mayor & C. C. of Balto. vs. Williams*, 6 *Md. Rep.*, 243, when deciding that case in the court below, and though the Court of Appeals decided that there was *actual* notice, they did not dissent from the decision below, that *constructive* notice, furnished by the *recording* of the prior voluntary conveyance, would have been sufficient. In *Williams vs. Banks*, 11 *Md. Rep.*, 250, the court said, that if the decision of the prior case, in 6 *Md. Rep.*, 235, had required it, they would have fully sustained the decision of *Chief Justice Le Grand.* It also appears, from the case of *Warren vs. Richardson*, cited by the Reporter, in a note, in 6 *Md. Rep.*, 272, that the same question was decided by the former Court of Appeals in 1837. In *Mill vs. Hill*, 22 *Eng. Law & Eq. Rep.*, 20, it was held under the Irish

Registration Act, that an equity in a grant, which is *registered*, will prevail against the right, even of a *bona fide* purchaser, to whom the original grantor had subsequently sold part of the property comprised in the registered deed. The same question has been expressly decided by the courts of other States where registry laws are in force. The case of *Beal vs. Warren,* 2 *Gray,* 447, is directly in point. See also 1 *Rawle,* 246, *Lancaster vs. Dolan.* 5 *Watts,* 456, *Dougherty vs. Jack.* 15 *Penn. State Rep.,* 260, *Salter vs. Reed.* 23 *Penn. State Rep.,* 440, *Wilson vs. McCullough.* 6 *Barb.,* 382, *Schutt vs. Large.* 11 *Foster,* 38, *Jewell vs. Porter, et al.* 24 *Maine,* 29, *Tilton vs. Hunter.* 6 *Pick.,* 86, *Shaw vs. Poor.* 1 *McLean,* 520, *Schults vs. Moore.* 17 *Ohio,* 226, *Irvin vs. Smith.* 15 *Illinois,* 540, *Rupert vs. Mark.* 1 *McCord,* 231, *Hudnal vs. Teasdall.* 3 *Rich. Eq. Rep.,* 41, *Footman vs. Pendergrass.* 8 *Ala.,* 866, *Ohio Life Ins. Co. vs. Ledyard, et al.* 3 *Md. Ch. Dec.,* 57, *Johns. vs. Reardon,* and same case affirmed in 5 *Md. Rep.,* 81. *Coke Litt., ( Title Releases,)* sec. 504, *note* 1.

4th. In the case now under consideration, the prior voluntary conveyance, of May 14th, 1792, was duly executed, acknowledged and recorded, open to the inspection of every one. The subsequent purchaser could, by the exercise of ordinary care, diligence and understanding, have discovered that his grantor had nothing more than a life-estate in the property which he was attempting to convey; and if, on the one hand, with the means of information, provided by law, before him, he neglected to use them, or, on the other hand, availing himself of them, he discovered nothing against the property in controversy, but the voluntary deed, which he undertook to disregard, he, and those claiming under him, must bear the consequences of their ignorance of fact or mistake of law. There is nothing in the record, worthy of the name of *evidence,* proving, or *tending* to prove, *actual fraud* on the part of the grantor against creditors; no indebtedness, no judgments, no decree, no insolvency; on the contrary, the fact of his reserving a life-estate in the property conveyed, which was liable, at any moment, to execution, at the suit of creditors,

conclusively rebuts the idea, that he intended to commit any fraud against them. Nor is there the least evidence to show a specific intent of defrauding subsequent purchasers for value. If, then, I am right in my views, that the notice afforded by registration is sufficient to bind subsequent purchasers, (of which, under the decisions of this court, and of the courts of other States already cited, there can be no question,) which constructive notice can only be done away by proof of *actual fraud*, and if there be in this case no evidence of a specific intent to defraud subsequent purchasers, (of which there is no pretence, the testimony produced by the defendants being offered merely with a view of showing that the grantor, Bankson, *"seemed to be a needy man,"* at the date of the voluntary deed,) it follows, that the first and second instructions of the court below were erroneous and should be corrected. 5 *Watts*, 378, *Foster vs. Walton*. 10 *Ohio*, 162, *Douglas vs. Dunlap*. 19 *Wend.*, 514, *Sanger vs. Eastwood*. 1 *Robinson*, 499, *Bank of Alexandria vs. Patton*. *Roberts on Fraud. Con.*, 52.

5th. The second prayer offered by the defendants, and granted by the court below, is also defective, not only because it states, in a somewhat different form, the proposition of law contained in the first prayer, which has been shown to be erroneous, but also because it groups together facts of which there is no evidence at all, asks the instruction of the court upon their effect, and thereby tends to mislead the jury. 6 *Md. Rep.*, 28, *Pierce, et al., vs. Negro John*. *Ibid.*, 88, *Preston vs. Leighton*. 3 *Gill*, 220, *Budd vs. Brooke*. 1 *Gill*, 127, *Whiteford vs. Burckmyer & Adams*.

*Reverdy Johnson, Jr.*, and *Reverdy Johnson*, for the appellees, argued:

1st. That the deed of May 1792 being purely voluntary, the fact of Bankson's subsequent sale of the same property to Diffenderffer, for full value and without *actual notice* to him, is *presumptive* evidence that the deed was fraudulent and void, and upon the appellant rests the *onus* of rebutting this presumption, which he fails to do; and all the circumstances at-

tending the execution of that deed, strengthen the legal presumption against its validity.

It is admitted, that under the construction adopted, both as to the statutes of 13th and 27th Elizabeth, mere *voluntariness* is not as now in England, *conclusive* evidence of fraud vitiating the conveyances referred to in those statutes. The statutes were designed to prevent fraud and its consequences, either as to creditors or subsequent purchasers. If we look to the object of the statute of 27th Elizabeth, we find that its purpose was to strike at and prevent the *fraud* of the *grantor*, no matter what effect the attainment of this object may have upon the voluntary grantee; it was the *grantor's* guilt and fraud that was to be prevented, and the construction given by the English courts, is better calculated to carry out the purpose of the Legislature, and seems to be the only one of which the language of the statute will admit, (79 *Eng. C. L. Rep.*, 724, *Newman vs. Rusham;* 9 *East.*, 59, *Doe vs. Manning;*) but the American ruling is otherwise. The English rule says, the subsequent conveyance is *conclusive* evidence of fraud, whilst the American cases say, it is only *presumptive* evidence of fraud; that is, that the mere fact of a subsequent sale throws a presumption of fraud retroactively, upon the voluntary deed, which a party claiming under it must clear up before his title can prevail. This must be the operation of the statute here, if any effect at all is to be accorded to it. Accordingly, in *Cathcart vs. Robinson,* 5 *Pet.*, 264, the Supreme Court, after having restricted the present English construction, declare, "that a subsequent sale, without notice, is *presumptive evidence* of fraud, throwing upon those claiming under the voluntary deed the *onus* of proving it was *bona fide*," and such is now the generally received doctrine in the different States, (1 *Am. Lead. Cases,* by *Hare & Wallace,* 67, notes to *Sexton vs. Wheaton,*) and the construction given in *Cathcart vs. Robinson,* has been expressly adopted in this State, and by this court in *Mayor & C. C. of Balto., vs. Williams,* 6 *Md. Rep.*, 235.

Now this *onus* being on the grantees under the voluntary deed, by what means can they rebut this presumption, but by

showing to the court and jury a state of things, at the date of their deed, which would render it extremely improbable the grantor could, at that time, have had in view any fraudulent purpose, as by showing him to have been in affluent circumstances, and disposing voluntarily of such property as would not embarrass him, and such other general facts as in the case of creditors would sustain a deed of this character? 5 *G. &* *J.*, 432, *Birely vs. Staley.* 5 *Gill*, 449, *Worthington vs. Shipley.* 11 *Md. Rep.*, 198, *Williams vs. Banks.* If they fail in this, and the facts, as in the present case, show absolute insolvency of the grantor at the time, continuing so up to the date of the deed to us, and after, with a life estate reserved to himself, he remaining in possession, and so shortly after disposing of the same property to an innocent party for full value, without intimating the existence of the prior deed, then the presumption of law controls the voluntary deed, as effectually as established fraud in fact would, (12 *Johns.*, 536, *Verplank vs. Sterry,*) and the innocence of the grantees in the voluntary deed makes no difference. 7 *Cowen*, 301, *Jackson vs. Mather.* 9 *Missouri*, 606, *Gamble vs. Johnston.*

2nd. Where a purely voluntary deed, such as that of 1792, is made, and the grantor is shown to be in very embarrassed circumstances, and by that deed conveys away his last piece of property, reserving to himself a life estate and remaining in possession, a jury may find under these and all the circumstances stated in the defendants' second prayer, that such voluntary conveyance is, as to subsequent purchasers from the grantor for full value, and without actual notice of the antecedent deed, not *bona fide*, but fraudulent and void! Even conceding that the statutes of 13th and 27th Elizabeth were merely in affirmance of the common law, the only result would be, that under both the common law and the statutes, *actual fraud* might be established, not only by positive and direct evidence, but by presumption, and circumstances strongly indicating that such an intention entered into the execution of the deed. In other words, that in all such cases the inquiry is one of intent, to be submitted to a jury on such evidence

as the nature of the case admits of.  *Cowp.*, 434, *Cadogan vs. Kennett.* 1 *Cranch.*, 309, *Hamilton vs. Russell.*

The defendants' second prayer granted by the court below, asks, that if the jury find the facts therein set out, they *may* find that the deed of 1792 was fraudulent and void; that is, that actual fraud entered into that transaction, which, by the verdict, they do find.   There is surely no error in that instruction, and the defect lies in the plaintiff's prayer, which takes from the jury any question of fraud in fact; it does not ask, that the jury be instructed there was no evidence of fraud, and must, therefore, assume, that even though the jury should find fraud in fact, the deed to the plaintiff would be valid against the subsequent purchaser.  2 *Gill*, 439, *Richardson vs. The State.*

The subsequent sale and conveyance makes out *presump-* *tive* fraud, and if this cause stood alone upon the deeds of 1792 and 1795, the judgment must be affirmed.   What else is there in the case?   Nothing but the fact of the *registration* of the prior voluntary deed, and as to this it is insisted:

3rd.   That if registration is implied notice of the antecedent deed; yet it only brings notice of the deed such as the law regards it, and such a deed, under the circumstances above mentioned, would be presumptively inoperative as to a *bona fide* subsequent purchaser for value, and, until rebutted, the legal presumption is equivalent to an ascertained fact.   2 *B. Monroe*, 345, *Lewis vs. Love.*

The settled law of this State is, that registration brings implied notice of a pre-existing deed to all persons.   But the mere fact of recording does not, of course, give to the conveyance any legal operation, which but for that it would not have, (5 *Md. Rep.*, 81, *Johns vs. Scott, et al.,*) the effect of the deed, and its sufficiency to convey what it purports to convey, are questions still open to inquiry, though the paper be recorded.   If, therefore, the appellees were constructively notified of the prior deed of 1792, it was only notice of a conveyance to which the law imputed a fraudulent character, and until such imputation is removed, they are no more affected than if notified at the time of their purchase, of a prior deed

steeped in actual fraud; both are, as to them, inoperative, the one in any event, and the other until the presumption attaching to it is rebutted by the appellant.

Whatever may have been the uncertainty prevailing in the English courts, before our Revolution, as to the true construction of the statute itself, in its operation upon voluntary deeds, it was perfectly understood, that notice of the existence of such a deed subjected the purchaser to no other consequences than such as would result from the prior deed itself, (5 *Coke*, 60', *Cowp.*, 278, *Chapman vs. Emery*,) and conceding, that the American doctrine does not go to the extent of the present English rule, it does, according to the decisions of *Cathcart vs. Robinson* and *Mayor & C. C. of Balto. vs. Williams*, impute a fraudulent character to the deed, which devolves upon those claiming under it the duty of establishing its *bona fides*, which, in this case, they have not done. That we had no actual notice is conceded, does then the constructive notice, by registration, affect Diffenderffer's title? The doctrine in *Cathcart vs. Robinson* is laid down in the face of the fact there appearing, (and this court, in *Mayor & C. C. of Balto. vs. Williams*, have adopted that decision based upon the facts of that case,) that the voluntary deed to Woodside was duly recorded, yet that deed was not allowed the operation now contended for, evidently on the ground, that *actual notice* was required to affect Cathcart, who was misled by the dealings of the defendants and other parties claiming under the prior deed, just as in this case we were misled by the action of Bankson and wife joining in the subsequent deed, both having knowledge of the voluntary conveyance without intimating its existence.

Whether the implied notice, assumed by the registry acts, is to affect the title of a subsequent purchaser, in cases like this, is still an open question in this State. In *Mayor & C. C. of Balto. vs. Williams*, though passed upon by Chief Justice LeGrand, while presiding in the lower court, this court, in affirming the ruling in the particular case *expressly waive* any decision upon that point, because the case did not necessarily present it; the notice to Banks, the subsequent purchaser there,

being equivalent to *actual notice*, and was so argued by coun-
sel and so held by the court. The case of *Williams vs.
Banks*, 11 *Md. Rep.*, 198, did not present the question as
applicable to this case, for that related to the Statute of 13
Elizabeth, as to creditors, and it being held, that *subsequent cred-
itors* had no right to impeach the voluntary deed, imputing
knowledge to them, of any kind, notified them of a deed in
every respect valid as to them. The case of *Warren vs. Rich-
ardson*, decided in 1837, by the Court of Appeals for the East-
ern Shore, and set out in a note by the Reporter in 6 *Md.
Rep.*, 272, will, upon examination, be found, not to present
the principles which the Reporter thinks are to be deduced
from it. There are no reasons assigned by the court for re-
versing the judgment below, and the only means we have of
ascertaining the actual points involved are, by the prayers in
the lower court and the argument above. The defendants
below, who claimed under the title of a subsequent purchaser,
prayed an instruction, that the *mere fact* of the prior deed be-
ing *voluntary*, rendered it *fraudulent* and void as to a subse-
quent purchaser, and that the jury *ought* to find for the de-
fendants; that is, that the present English rule, as laid down
in *Doe vs. Manning*, prevailed in this State. In the argument
above, the defendants' counsel expressly rely upon that and sim-
ilar authorities to support the prayer. The plaintiffs below,
on the other hand, contended for the doctrine laid down in
*Cathcart vs. Robinson*, upon which case, in the argument, he
relied. The court below granted the defendants' prayer, mak-
ing the mere fact of the deed being voluntary a *conclusive*
badge of fraud, which, of course, shut out the plaintiff from
producing any evidence to rebut it. Now the Court of Ap-
peals simply reverse that ruling and award a *procedendo*. The
only question therefore necessarily involved was, what, in
Maryland, was the true construction to be given, in this res-
pect, to the statute? It would seem therefore, that the only
operation of the action of the appellate court was to overrule
the English doctrine and adopt that laid down in *Cathcart vs.
Robinson* and the current of American cases. *Non constat,*
but that upon the *procedendo*, the point we are now consider-

ing, was raised and mooted as an open question in this State. The *second* inference therefore, drawn by the Reporter, from this case, we think clearly erroneous.

By holding that registration simply is notice sufficient to prevent the calling in question of the prior deed, you arm a fraudulent vendor with power greater than he would otherwise have, and such cannot be the effect of the registry laws.   Their object was to protect *fair*, and not *fraudulent* titles.   The subsequent purchaser, *with notice*, is not allowed to impeach the prior deed, *because* it would enable him to perpetrate a *fraud* on the voluntary *grantee*.   This position rests upon the enlarged doctrine of equity, that where two innocent parties are to suffer, the loss must fall on him who could most easily have prevented it, who, in such a case, is the subsequent purchaser, for he was not bound to buy.   But the *notice* which is to affect his *conscience*, and thus make it fraudulent in him to purchase, must be *actual* notice, and not that *constructive* notice which is afforded by the mere *registration* of the prior deed.   So it was expressly decided in *Fleming vs. Townsend,* 6 *Geo.*, 103, and this position is sustained by the authorities there cited, at page 112, viz:   1 *Sch. & Lef.,* 90, *Bushel vs. Bushel.   Ibid.,* 137, *Latouche vs. Lord Dunsany.*   2 *Sch. & Lef.,* 66, *Underwood vs. Lord Courtown.*   2 *Ball & Beatty,* 68, *Pentland vs. Stokes.*   1 *Younge & Jervis,* 117, *Wiseman vs. Westland.*   2 *Johns. Ch. Rep.,* 190, *Dey vs. Dunham.* 4 *Kent,* 462, 463.   The cases cited on the other side, from Pennsylvania, cannot apply here, for the registry laws of that State declare a deed fraudulent and void against a subsequent purchaser or mortgagee, *unless recorded,* the converse of which is, that the subsequent purchaser is *bound,* if the deed is *recorded,* whereas, in our registry acts there is no such provision, the only penalty here being, that no *title passes,* unless the deed is recorded.

4th.   Such being the construction given the statute of 27th Elizabeth, by decisions of this State, which, of course, assume that the statute is an existing law with us, the court can give no greater effect to constructive notice, by registration, without virtually deciding that the registration acts and the statute

cannot stand together on the statute book. It is, and must be admitted, that all English statutes in operation at the date of our Revolution were, so far as applicable, adopted into the State law. At the period referred to numerous acts providing for registration had been passed by the Colonial Legislature, (see acts of 1715, ch. 47, 1766, ch. 14,) and doubtless others between that period and the report of Mr. Kilty on the statutes in 1810, which is settled authority with us as to what statutes were incorporated. 5 *H. & J.*, 392, *Dashiell vs. The Attorney General*. By that report, page 235, we have the statute of 27th Elizabeth expressly adopted. Mr. Kilty says, there can be no doubt about its adoption, and it is, therefore, brought upon the statute book just as special legislation to a similar effect would be, and that in the face of numerous registration acts then existing. The Legislature must have intended that the statute was to have some effect. It could not be assumed to have legislated upon a subject utterly inconsistent with existing laws, and these laws not pretended to be repealed; and as no subsequent registration acts expressly repeal the adopted statute, will the courts, in the face of obvious legislative intent, construe a repeal where the respective laws are not necessarily inconsistent or repugnant? The general principle is, that even where two statutes appear to clash, if, by interpretation, they may stand together, operation will be given to both, (4 *G. & J.*, 1, *Canal Co. vs. Rail Road Co;* 1 *Gill*, 203, *Beall vs. Black;* 4 *How.*, 51, 53, *Beals vs. Hale;* 1 *Black. Com.*, 89;) and in 16 *Pet.*, 342, *Wood vs. The United States,* the Supreme Court say, there must be positive repugnancy between the new law and the old to work a repeal. Is that the case here? The registration acts, collectively, serve a vast variety of purposes;—the statute of 27th Elizabeth covers a particular case; and judicial decisions having determined the effect of a deed contemplated by the statute, do not the registration laws subserve their full purpose in merely bringing to a party knowledge of a deed affected by the provisions of that statute? But if the appellant's view be correct, then the fact of such a deed being on record clears it of all presumptions and questions arising under the statute, and necessarily annuls that act.

The principal point in the argument, by which it is attempted to be maintained that the statute is not in force in Maryland, is founded upon the assumption, that the voluntary deed being upon record, *no injury can result therefrom* to the subsequent purchaser, unless from his *own laches*. Now, if the the chief purpose of that statute was, to save the purchaser from loss or injury by reason of the previous voluntary deed, we might admit some force in such an argument, but such is not the case; that statute has reference, not to the acts or conduct of the *grantee*, but to the *fraudulent purpose* of the grantor, and the object and intent of the statute is not so much to protect the interest of the grantee, as to *prohibit* and *punish* such fraudulent attempts on the part of the grantor. That such is the chief purpose of the statute, and such the construction which it has always received in England, is manifest from the uniform tenor of the reasoning of their decisions. Hence, to say that a prudent purchaser has no right to complain of a previous voluntary deed, because he ought to have been aware of it, is no answer to the *reason* upon which the statute is founded, or to its purpose and object. Suppose that a registration law, similar to our own, existed in England, or in any part of that kingdom, can any one suppose that the statute would be there held to be inapplicable to that part of the realm, by reason of such registration? To hold that it could possibly receive such a construction, would be to impute to their tribunals, the inconsistency of nullifying the statute in case of *constructive* notice, whilst they hold that even with *actual* notice, the voluntary deed, followed by a subsequent sale for value, is *conclusive* evidence of fraud. Hence, we find their decisions, in respect to the effect of registration, under such acts, consistent. 9 *Irish Eq. Rep.*, 171, *Drew vs. Lord Norbury.* 1 *Cox*, 182, *Caton vs. Cooley.* 1 *Younge & Jervis*, 117, *Wiseman vs. Westland.* We hold, therefore, that we must bear in mind the *object* of this statute—to discourage such frauds—and so construe and so apply it as to promote that object.

How does the existence of a registry law take away the *motive* for the perpetration of such frauds? That it increases

the chances of detection we may well admit, but still, if the fraudulent grantor *can* elude detection, once abrogate the statute and he is safe, and his fraudulent purpose accomplished beyond all fear of consequences. Once let it be understood that there is no law in force, in Maryland, prohibiting such frauds, and we absolutely invite the attempts to commit them. What was done by Bankson in 1792, will be attempted—it may not be with the same success—but still attempted by many others in our day, and no case can be put, better calculated to illustrate the point, or to deceive the confiding purchaser, than this very case. The man designing to commit such a fraud will argue with himself somewhat to this effect:

I will convey my property to my infant children. I will take care to reserve to myself and wife a life interest. I will, at some time afterwards, quietly put my deed on record—will say nothing about it, will continue for years afterwards to retain possession, and exercise in the view of the world every ostensible act of ownership. By and by, my neighbor offers me a full price for it, and I agree to take it. I incur no risk in so doing; if he finds out that I have made such deed before he pays the price, there is no harm done, no penalty awaits me—I have still my land and am of course no worse off—but if, on the other hand, confiding in my common honesty, knowing of my long continued possession and acts of ownership up to the very day when I agree to sell it to him, having satisfied himself that there are no incumbrances, properly so called—say judgments or mortgages—affecting the property, and warranted as he might well feel himself in supposing, that if I had sold, or conveyed to another at any time long antecedent, I would not still retain the possession—if confiding in these circumstances, which many might without undue credulity, he pays the money—why I will make him a deed—my wife shall unite and relinquish her dower—I will put him in possession—and wait for long years to elapse—wait until he has expended thousands in costly improvements—wait until every fact and circumstance which might by possibility have exposed my nefarious design has faded from the memory of men, and then I will step in, claim my life estate

—or if, vile as I am, I have not the face to set up myself such a demand—I will at my death pass the word to my children, the grantees in the deed, and they shall reap the rich rewards of my fraud in the costly improvements of my ruined dupe.

Can it be possible, that we are prepared to repudiate a statute the objects and effect of which is to close the door upon such unrighteous attempts? Is it an answer to the encouragement which that repudiation would furnish to such designs, to say to the innocent party against whom they have been consummated—it is but just that you should lose the thousands you have expended upon this property, and the authors of the fraud should gain them, as a proper punishment for your credulity or your neglect. Is it not saying in effect, that it is the policy of the law rather to punish such credulity or neglect than such a fraud? But on the other hand who can possibly suffer harm if we allow the statute to apply, registry or no registry. Construing it, as the defendants' prayer assumes, not as *conclusive* but *presumptive* evidence of the fraud—does not a sale, under such circumstances, in sound reason, as well as established decisions, warrant such a presumption—and if there are circumstances to rebut it, is it not sufficient that you allow him to whom it is imputed the opportunity to do so? 17 *Wend.*, 462, *Wood vs. Long*.

In the case of *Warren vs. Richardson*, there is nothing tending to show that the statute was *not* in force here, the contrary is the inference, from all we can gather from the report, when the counsel who maintained the validity of the deed, actually assumed the existence of the statute, and argued merely, as we do here, that it operated as *presumptive* and not *conclusive* evidence of a fraudulent intent.

If, therefore, we can find no express decision in our courts affirming in so many words the existence of that statute in Maryland, it is not so much because the case has never occurred where the question presented itself, as because both bench and bar seem always to have assumed that its existence was beyond all doubt.

Judge Dorsey, in the case of *Bohn vs. Headley*, 7 *H. & J.*, 257, evidently acted upon the same undoubting assumption,

when he decided, as he there did, that the statute was not applicable in that case;· not because the statute itself was not in force in Maryland, but because it did *not embrace personal property*, which was the subject matter of the suit then before him. In fact, it is not assuming too much to say, that ever since the publication of Kilty's Reports of the statutes, the whole legal profession of the State have acted on this assumption,—and had Diffenderffer, the grantee under Bankson's deed, discovered accidently after his purchase the existence of the previous voluntary conveyance, and taken counsel on the subject, we hazard nothing in saying, that among all the eminent men who, fifty years ago, adorned the bar of Maryland, there was not one who would have hesitated to advise him that his title was completely protected by the operation of the Statute of Elizabeth.

There are, no doubt, hundreds of other titles in Maryland similarly situated, which, upon the assumption of the existence of that statute have never been questioned, and never ought to be questioned; but many of which, if a different construction is now for the first·time given to the law, will find their way into the courts, and the property which they were supposed to guarantee be wrested from the rightful owners. How little reliance can be placed upon a long adversary possession to prevent such a result, this case clearly demonstrates, where half a century and upwards of such possession has been insufficient for the purpose. It is a question, therefore, of the gravest consideration, how far it becomes us to disturb a rule of property, which, in the uniform estimation of the profession,· has been considered of acknowledged applicability. And however we may occasionally feel disposed to introduce into the law, as into other sciences, the improvements which we may think justified by the progress of the age, we should tread with particular caution as we approach any of the questions touching the transfer of real estate,—and pause before we uproot any of those ancient land-marks of the law which may define the titles to much of the land of Maryland.

LE GRAND, C. J., delivered the opinion of this court.

This case has been discussed at the bar with great fullness of illustration, and the views of the respective counsel, presented with clearness and cogency of reasoning.

To our minds—looking to past and distinctly recognized adjudications—the questions we are called upon to decide are confined within a narrow space. The action is one of ejectment, and the principal facts of the case may be thus stated:

On the 14th day of May 1792, a certain Joseph Bankson, by deed, conveyed (reserving to himself and wife, and to the survivor of them, a life estate therein) a certain lot of ground and the improvements thereon, to his three children, Harriet Giles Bankson, Joseph Bankson and Elizabeth Bankson, their heirs and assigns forever, as tenants in common. The consideration for this conveyance was natural love and affection, and the nominal sum of five shillings. On the 17th day of February 1795, the aforesaid Joseph Bankson conveyed the same property to Daniel Diffenderffer, for a valuable consideration, the wife of Bankson releasing her dower. Diffenderffer immediately took possession, and remained in it until his death in 1809 or 1810, devising the property to his wife, who continued in it until her death, which occurred in 1832 or 1833, after which, it was sold by a trustee appointed for the purpose, and the title of Diffenderffer and wife, by legally executed and acknowledged *mesne* conveyances, and lastly, by a deed from Henry Dorsey, became vested in Thomas Kell, who paid for it $7000, and who remained in possession of it until his death in 1846. The lessor of the plaintiff claims title under the voluntary deed of 1792, and the defendants under the deed of 1795, for a valuable consideration to Diffenderffer, and through the intermediate conveyances down to Thomas Kell, and through and from him down to themselves. The deeds of 1792 and 1795, were both placed on record in the proper office on the days of their dates. The widow of Joseph Bankson survived her husband until 1843. Elizabeth Bankson, (who intermarried with a certain John S. Cooke, since dead,) is the only child of the grantor, being a grantee in the deed of 1792, now living, the other two

62    v. 13.

children having died without leaving issue.　There was testimony given on the part of the defendants, for the purpose of showing that the elder Bankson was apparently in needy circumstances, and that, at the time of the execution of the deed in 1795 to Diffenderffer, it did not appear, from the public records, he had any other property than that mentioned in that conveyance, and also, that until a very short time before the institution of this action, no claim on the part of the grantees in the deed of 1792, was heard of by the witnesses. This is substantially the evidence in the cause.　The plaintiff offered one prayer to the court, which was rejected, and the defendants two, which were granted.

The defendants contend, that under a proper construction of the statute of 27*th Elizabeth*, entitled, "An act against covinous and fraudulent conveyances," and the circumstances of this case, the deed of 1792, under which the lessor of the plaintiff claims title, is void and of no avail as against the defendants, who claim under the deed of 1795, which was for valuable consideration; that as to them, it is void and fraudulent, there being no evidence of notice of the deed of 1792, and that it was executed with a fraudulent intent in fact.

On the other hand the plaintiff insists, that neither in law, nor in fact, was there any fraud in the execution of the deed of 1792, and that it is all sufficient to entitle her to recover in this action.

The first inquiry for our determination is:　What is the re-received and binding interpretation of the statute of 27*th Elizabeth, ch.* 4, in this State?　On this, principally depends, the decision of this case.　Until the year 1807, when was decided the case of *Doe vs. Manning*, 9 *East.*, 59, there was much contrariety of opinion in England—and doubtless, also in this country—as to the true meaning of the statute; since then, however, the opinion of *Lord Ellenborough,* has, in England, put to rest all judicial doubts on the subject.　Were that opinion law in this State, there would be an end to the plaintiff's title under the voluntary deed of 1792.　But it is not the law.　In the case of *Warren & others' Lessee, vs. Richardson & Wife, et al.*, decided in the year 1837, the Court of Appeals relied upon and adopted the decision of the

Supreme Court of the United States, in the case of *Cathcart vs. Robinson*, 5 *Peters*, 280, and in the case of the *Mayor & City Council of Balto. vs. Williams*, 6 *Md. Rep.*, 235, this court again construed the statute of 27*th Elizabeth*, and again adopted the construction placed upon it by the Supreme Court. Fully concurring in the correctness of those decisions, we are relieved from all inquiry as to what may be the law elsewhere. The principal difference between the doctrine of *Doe vs. Manning*, and that of *Cathcart vs. Robinson*, consists in this: By the former, the mere execution of a voluntary deed raises the presumption—which cannot be rebutted—of fraud as against subsequent purchasers for value, whilst by the other, the rule is, in the language of Chief Justice Marshall: "A subsequent sale *without notice*, by a person who had made a settlement not on valuable consideration, was presumptive evidence of fraud, which threw on those claiming under such settlement, the burthen of proving that it was made *bona fide*." This quotation from the opinion of Chief Justice Marshall, contains, to the fullest extent contended for by the counsel of the defendants, their interpretation of the statute. It does not assert the doctrine, in any sense, that a *voluntary* deed is void simply because it is voluntary; it merely—as against subsequent purchasers for value— makes it *presumptive* evidence of fraud, where there has been no *notice* to subsequent purchasers, and casts, in such a case, upon those claiming under it, the burthen of disproving the presumption. When the subsequent purchaser *has notice*, no such presumption arises, and as was said in 6 *Md. Rep.*, 265: "To hold that, with notice to the purchaser, the settlement is subject to the presumption of fraud, simply in consequence of the subsequent conveyance for value, we think is not required by the language of the statute, and is inconsistent with correct moral feeling."

This being so, the question then is : Had Diffenderffer notice of the voluntary deed of 1792? There is no evidence in the record showing that he had, in *point of fact*, notice of its existence; on that head there is perfect silence. Whether or not, then, he had such notice as will bind him, and those

claiming under him, must depend upon the effect of our regis-
tration laws. The deed of 1792 was placed on record the
day of its execution, and, of course, open to inspection in
1795, when the second deed was made.

In the case of *Warren vs. Richardson,* already referred to,
decided by the late Court of Appeals, and reported in 6 *Md.
Rep.,* 272, the Reporter, in a note, has drawn the inference
from the decision of the court upon the prayers offered, and
from the facts appearing in the record of that case, and from
the fact, that the Court of Appeals, upon the reversal of the
judgment awarded a *procedendo,* "that the notice which will
bind the subsequent purchaser, need not be *actual,* but that
*constructive* notice furnished by the recording of the voluntary
deed under our registry laws, is sufficient." In this, we think,
he was correct. There was no evidence, that the subsequent
purchasers in that case had any *actual* notice of the prior vol-
untary deed. If, then, the fact of the registry of the deed did
not affect them with notice, we are unable to perceive for
what purpose a new trial was directed under a *procedendo*?
We think the court could not otherwise than have decided,
that the registry of the deed affected the subsequent purcha-
sers with notice, and thereby shifted the *onus* upon them to
show, if they could, that the deed was fraudulent in fact, and
for the purpose of enabling them to do this, ordered a new
trial. If the registry of the deed did not have, in the opinion
of the court, this effect, then, the defendants stood in the
attitude of subsequent purchasers for value, *without notice,*
and the question of law raised by the prayers, became a mere
*abstract* proposition, the decision of which, either way, would
have been of no avail to the voluntary grantees under the
deed.

But, be this as it may, the interpretation we have sanctioned
is fully sustained by express decisions. In the case of *Beal
vs. Warren & another,* 2 *Gray,* 450, the Supreme Court of
Massachusetts, when speaking of a voluntary deed, under the
statute of 27*th Elizabeth,* say: "No question is made whether
the second grantee had *actual* notice of the first conveyance,
though, from the relation of the parties, and from the fact, that

there was no attempt to show actual fraud, such notice may reasonably be inferred. Nor would this be, in the *absence of fraud,* material; for the *registration* of the conveyance would be *constructive* notice, and *sufficient notice,* to all *subsequent purchasers.''* In the case of *O'Neill vs. Cole,* 4 *Md. Rep.,* 123, the court, referring to a deed, executed by a female, a short time before her marriage, and which was contested by her surviving husband after her death, remark that, "If the appellant, (the husband,) had reason to suppose that his late wife, before their marriage, had been imposed upon, or induced to execute a conveyance of which she did not know the contents and meaning, it was quite proper for him to resist the attempt of the appellee to possess himself of the property. In this we think he has failed; and if, failing in this, he seeks to make out a case of fraud in law upon his marital rights, *there is no reason why he should not be bound by the notice, which our recording acts impute to others when seeking to vacate conveyances, or when claiming against them.''* In the same case, the Chancellor had previously said, 3 *Md. Ch. Dec.,* 174, that, "It is the settled American doctrine, that the registration of a conveyance, operates as *constructive* notice upon all subsequent purchasers of any estate legal or equitable in the same property." And as was said by a majority of the court, in the case of *Williams, et al., vs. Banks, et al.,* 11 *Md. Rep.,* 250: "It seems to us a contradiction in terms, to say, that a person is defrauded by an instrument, when he deals with a perfect knowledge of its existence and of its effect. If our registration laws have any operation, they certainly do, as they were designed, give notice to all the world, so that there may be no deceit practiced upon any one. If registration laws do not give notice to the community which will bind it, then they are of no use whatever, for, without registration, deeds would be binding *inter partes.''* This language was applied as well to deeds under the 13*th,* as to those under the 27*th* of *Elizabeth.*

These authorities are all sufficient, in this State at least, to show that registration is *constructive* notice, and all sufficient to bind subsequent purchasers in the absence of actual fraud.

The prayer of the plaintiff was defective, only in the omission, to require the jury to find the existence of the deed of 1792.

The first prayer of the defendants was erroneous, in ignoring the effect of the registration, and requiring *actual* notice. We do not think the facts, if found, enumerated in their second prayer, sufficient to have authorised the jury to find the deed of 1792 was not *bona fide, but fraudulent and void.* All those facts might be found, and, nevertheless, the deed might be *bona fide* and valid. There must be some pointed evidence to establish fraud in fact. We affirm the court below in its rejection of the plaintiff's prayer, and reverse its decision granting the prayers of the defendants.

If left to conjecture, we may imagine, that the case was a hard one on Diffenderffer, as it was undoubtedly on Kell, who paid a full price; but it may, also, on the other side, be supposed, that Diffenderffer had actual as well as constructive notice of the deed of 1792, when he accepted that of 1795, but, that relying upon what may be very reasonably supposed, at that time, to have been the opinion of the profession, as to the true construction of the statute of *Elizabeth,* he believed it competent to the elder Bankson to give him a good title. But with surmises we have nothing to do. Unless the defendants can establish fraud in fact, the registration of the deed of 1792, concludes them in this action.

*Judgment reversed and procedendo awarded.*
(Decided May 31st, 1859.)