Arunah S. Abell *vs.* Frederick J. Brown, Surviving Trustee.

*Acts of a Trustee without Order of Court—Right of Trustees to maintain a Suit without Order of Court first obtained— Setting Aside a Release of Mortgage—Breach of Trust.*

By an order of the Superior Court of Baltimore City, passed in a cause in equity the 8th February, 1869, E. W. B. who had, in September, 1863, been duly appointed trustee therein, was authorized to loan to W. G. R. the husband of E., one of the *cestuis que trust*, $12,000, of the trust fund of said cause, secured by the bond of W. G. R. and Mrs. S. C. R., and a mortgage of a farm in Baltimore County. On the 23rd December, 1869, E. W. B., trustee, without order of or report to the Court, and without its approval, released the mortgage of the farm, and on the same day took in lieu thereof to secure the same loan, a mortgage from Mrs. S. C. R. of another tract of land in said county. On the 28th April, 1870, E. W. B., trustee, without order of or report to the Court, and without its approval, united with Mrs. S. C. R. in executing a deed to P., conveying to him a part of the tract of land included in the mortgage last mentioned in consideration of $5026.88, paid by P. but not to the trustee, thereby releasing from the mortgage the parcel so conveyed. On the 6th January, 1871, this parcel was, for a valuable consideration, conveyed by P. and wife to A. In November, 1871, Mrs. S. C. R. made a deed of trust of all her property for the benefit of her creditors. Her estate paid a very small dividend. W. G. R. died insolvent in February, 1878. After the death of E. W. B. in October, 1877, F. J. B. and the late F. W. B. were by order of the Superior Court, appointed trustees in E. W. B's stead. Default having been made in paying the interest on the loan, and in paying the principal, after due notice, the new trustees proceeded under the power contained in the mortgage of the 23rd December, 1869, to sell all such part of the tract of land as remained unreleased. The sale was duly reported to and ratified by the Circuit Court for Baltimore County. The proceeds from the sale were $5206, leaving a balance still due the trustees of $8614.42, with interest from the day of sale, the 30th April, 1878. On the

17th May, 1878, without authority from the Superior Court, for that purpose first obtained, the trustees filed their bill in the Circuit Court for Baltimore County, to set aside the release executed by E. W. B., late trustee, to P., and to obtain a decree for the sale of the parcel of the land (not worth more than than the balance due,) conveyed by P. and wife to A., for the purpose of satisfying the said balance. HELD:

1st. That the trustees had authority to institute the suit; and that the Circuit Court for Baltimore County had jurisdiction.

2nd. That they were entitled to the relief prayed.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ALVEY and IRVING, J.

*Charles J. M. Gwinn,* for the appellant.

*Frederick J. Brown,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

There is no dispute about the facts of this case; most of them are embodied in an agreed statement contained in the record.

It appears that by an order of the Superior Court of Baltimore City, sitting in equity, passed in September 1863, in the case of *Waters vs. Waters,* the late E. W. Blanchard, Esq., was appointed trustee of the estate of Charles Waters, deceased, and continued to act as such trustee till the time of his death in August 1877.

By the order of the Superior Court, passed on the 8th day of February 1869, Mr. Blanchard was authorized to loan to Wm. George Read, the husband of Elizabeth A., one of the *cestuis que trust,* $12,000 of the trust fund,

secured by the bond of Wm. George Read, and Mrs. Sophia C. Read, and a mortgage of a farm in Baltimore County, known as the "Grove" or "Manor Vale Farm." The bond and mortgage were executed in proper form, and the latter was duly recorded.

On the 23rd day of December 1869, the trustee without being directed to do so by the Superior Court, and without his action therein being reported to, or approved by that Court, released the mortgage of the "Manor Vale Farm," and on the same day took in lieu thereof to secure the same loan, a mortgage from Mrs. Sophia C. Read of seven parcels of land, situated in Baltimore County, near the Philadelphia turnpike road, containing about eight hundred and eighty-two acres.

On the 28th day of April 1870, the trustee united with Mrs. S. C. Read in executing a deed to Thornton P. Pendleton, conveying to him *one hundred and sixty-nine and a half acres*, being a part of the land included in the mortgage of Mrs. S. C. Read, thereby releasing from the mortgage the parcel so conveyed. The consideration paid by Pendleton, as stated in the deed, was $5026.88, and it is shown by the proof, that no part of this consideration was paid to or received by the trustee. The deed to Pendleton was executed by the trustee without the order or sanction of the Superior Court, and his action in the premises was not at any time reported to, or approved by the Court.

On the 6th day of January 1871, this parcel of one hundred and sixty-nine and a half acres was, for a valuable consideration, conveyed by Pendleton and wife to the appellant, who now holds the same.

In November 1871, Mrs. S. C. Read, being in embarrassed circumstances, made a deed of trust of all her property to Stewart and O'Donnell, for the benefit of her creditors; but her estate in the hands of her trustees, has proved insufficient to pay any but an insignificant divi-

Abell *vs.* Brown, Surviving Trustee.

dend to her creditors. After making the deed of trust, she was without means, and Wm. George Read, her co-obligor in the bond given February 8th 1869, died insolvent in February 1878.

After the death of Mr Blanchard, viz., on the 30th day of October 1877, the appellee and the late F. W. Brune, Esq., were, by the order of the Superior Court, appointed trustees in the place and stead of Mr. Blanchard.

Default having been made in paying the interest on the loan, and also in paying the principal, after due notice, the new trustees proceeded, under the power contained in the mortgage of December 23rd 1869, to sell all such part of the lands near the Philadelphia road, as remained unreleased in their hands, as successors in the trust. The sale was duly reported to the Circuit Court for Baltimore County, and ratified. It is admitted that the sale was fair and *bona fide*, the proceeds therefrom were $5206, leaving a balance still due to the trustees of $8614.42, with interest from April 30th 1878, the day of sale.

On the 17th day of May 1878, the trustees filed their bill in the Circuit Court for Baltimore County, praying that the release executed by the former trustee to Pendleton, dated April 28th 1870, be vacated and set aside, and that the parcel of one hundred and sixty-nine and a half acres, conveyed by Pendleton and wife to the appellant, be decreed to be subject to be sold for the purpose of satisfying the balance of the mortgage debt. It is admitted for the purposes of this case, that the land so conveyed to the appellant, is not worth more than the said balance of the mortgage debt.

This appeal is from the decree of the Circuit Court granting the relief prayed.

Without the authority or sanction of the Court, the former trustee had no power to release from the lien of the mortgage any part of the property, and it was a breach of trust on his part to unite in the deed to Pendle-

ton for that purpose; especially as no part of the consideration for the deed, was paid to the trustee. As said in *Lewin on Trusts*, 571 *m.* (*2nd Am. Ed.*): "Where trustees are mortgagees, they are often requested to release part of the land from the security, in order to enable the mortgagor to deal with it for his own convenience. Where the value of the land is not excessive as compared with the debt, it would of course be a gross breach of trust to deteriorate the security." Pendleton having knowledge that the mortgage was trust property, and being, therefore, a participant in the breach of duty by the trustee, could receive no benefit from the release, the property while in his hands would be held subject to the mortgage, and a Court of equity would not hesitate to set the release aside at the instance of the *cestuis que trust*. As said in 1 *Perry on Trusts, s.* 217: "It is a universal rule, that if a man purchases property of a trustee, with notice of the trust, he shall be charged with the same trust, in respect to the property, as the trustee from whom he purchased." We refer also to *Lewin on Trusts, ch. XXVI, sec.* 1; 1 *Story's Eq. J., sec.* 395, and *secs.* 1257 to 1265; *Oliver vs. Piatt,* 3 *Howard S. C. R.,* 401; *Lowry vs. Com. and Farmers' Bank, Campbell's R.,* 310; and *Stewart and Duffy, Trustees, vs. Firemen's Ins. Co.,* 53 *Md.,* 564.

It is equally well settled that if a party who has thus dealt with the trustee, and acquired property in violation of the trust, has aliened the same to a third person who acquires the title with notice of the trust and of its breach, it may be followed into the hands of the alienee.

This proposition is established by the authorities before cited, and by the whole current of decisions. The question then to be determined is whether the appellant stands in the position of a *bona fide* purchaser without notice, and entitled to protection. There is no evidence that he had any actual knowledge of the trust, or of the

equities of the *cestuis que trust* in the property, at the time he purchased and received his deed from Pendleton. But actual knowledge is not required to be shown in order to affect the rights of the appellant; for this purpose it is sufficient to show that he had constructive notice. The deed from Pendleton to him dated January 6th 1871, informed him that the property had been acquired by his grantor, by a conveyance from Sophia C. Read and E. Wyatt Blanchard, *trustee*, dated April 27th 1870, which was of record, and which in terms referred to the mortgage of the property from Sophia C. Read to E. Wyatt Blanchard, *trustee*, of the estate of Charles Waters, deceased, dated December 23rd 1869, and which was also of record.

"The registration of a conveyance operates as constructive notice to all subsequent purchasers, of any estate legal or equitable in the same property." 1 *Story's Eq. J.*, sec. 403. This is the established law in Maryland. *Williams vs. Banks*, 11 *Md.*, 198 ; *Cook's Lessee vs. Kell*, 13 *Md.*, 469.

"What is sufficient to put a purchaser on inquiry is good notice, that is, where a man has sufficient information to lead him to a fact, he shall be deemed conusant of it." 2 *Sugden on Vendors*, 762m, and on page 775m, it is laid down that "in all cases where a purchaser cannot make out a title, but by a deed which leads him to another fact, whether by description of the parties, recital or otherwise, he shall be deemed conusant thereof, for it was *crassa negligentia* that he sought not after it ; and for the same reason if a purchaser has notice of a deed, he is bound by all its contents." We refer also to *Baynard vs. Norris*, 5 *Gill*, 483 ; *Price, et al. vs. McDonald*, 1 *Md.*, 403, and *Magruder vs. Peter*, 11 *G. & J.*, 218, 243.

It follows from the application of these rules to the evidence in the record, that the appellant must be charged with constructive notice of the trust, and of its breach.

His deed informed him that the title was derived from a trustee, the mortgage of December 23rd 1869, informed him that the same property was held by Mr. Blanchard as trustee of the estate of Charles Waters, deceased, and constituted a part of the trust fund. A reference to the record of proceedings in the Superior Court under which the trustee derived his appointment, if examined, and it was his duty to examine them, would have informed him of the nature of the trust, and the powers and duties of the trustee, and he would have discovered that the act of the trustee in releasing the property in question from the operation of the mortgage was without the order or sanction of the Court; and having taken the title under such circumstances, he cannot claim the protection of .a *bona fide* purchaser without notice. The property in his hands remains charged with the trust, and liable to be followed by the *cestuis que trust*, and subject to the payment of the mortgage.

The rights of the *cestuis que trust* may be asserted by the appellee. It was decided in *Stewart & Duffy vs. The Insurance Company,* before referred to, that the new trustees appointed as in the present case, have the right to maintain suits against the proper parties, for breaches of trust committed by their predecessors, or for injuries done to the trust property while in their hands, and under their management; and that in a bill filed for that purpose, the *cestuis que trust* are not necessary parties. We have treated the case thus far as if the mortgage of December 23rd 1869, was the instrument originally executed as a security for the loan to Wm. George Read. It appears from the record, as before stated, that the mortgage of the "Manor Vale Farm," which was originally taken by the trustee under the order of the Court, was without the sanction or authority of the Court released, and the mortgage of December 23rd 1869, was taken by him in lieu thereof. Undoubtedly, in this respect, the

trustee acted in violation of his duty, and committed a breach of trust; and one of the defences relied on in the answer, is that the consequence resulting from the unauthorized action of the trustee in this respect, is that the mortgage originally taken remains in force,. and that of December 23rd 1869, operated only as a security taken by Mr. Blanchard in his own right, and not as *trustee.* Or in other words, because the former mortgage was released without proper authority, the last mentioned mortgage cannot be enforced for the benefit of the *cestuis que trust.* But we do not assent to this proposition. Whatever right or claim may still exist under the former mortgage, is a question with which the appellee in this case has nothing to do. The breach of duty on the part of the trustee in releasing the property first mortgaged, is no answer to the claim now asserted under the mortgage of December 23rd 1869. This was, in fact, taken by Mr. Blanchard in his character as trustee, to secure a loan of the trust fund, and in lieu of the mortgage of the "Manor Vale Farm." In *Heth vs. Railroad Company,* 4 *Grattan,* 482, it was held that "property to which a trust has attached will be subjected to the trust, in the hands of a purchaser for value who has constructive notice of the trust; and this, though it was irregular in the trustee to invest the trust fund in the property."

And this is consonant both with reason and authority. The parties holding the "Manor Vale Farm" are not parties to this suit. Whatever rights may exist against that property in favor of the *cestuis que trust,* or on the part of the appellant for contribution, are questions which do not arise upon the record, and we express no opinion thereon.

It remains to be considered, 1st. Whether the Circuit Court had jurisdiction of the cause, and 2nd. Whether complainants had authority to institute the suit.

1st. As to the jurisdiction, it does not appear by the record that any objection was made in the Court below,

on the ground of want of jurisdiction; but waiving this difficulty, and assuming that this objection has been taken in time, we are of opinion that it is not tenable.

The ground upon which it is based, is that the Superior Court having acquired jurisdiction over the subject-matter of the trust estate, was entitled to retain exclusive control over its management; but it is obvious that the institution of this suit in no manner attempts to take away from the Superior Court its exclusive control over the management of the trust. The trustee is the officer of the Superior Court, acting under, and subject to its authority, and bound to account in that Court for the trust funds coming into his hands. To recover such funds, he may institute suits at law or in equity, and must bring such suits in the Court having jurisdiction in the premises. Such a proceeding is in no sense an interference with the jurisdiction of the Superior Court, in the management of the trust. In this case the land in question lies in Baltimore County, and the defendant resides in that county, out of the jurisdiction of the Superior Court; the suit was therefore instituted in the proper Court.

2nd. As to the capacity of the complainants to sue. It does not appear that they obtained from the Superior Court authority to file the bill, and it is contended, that without such authority they are not entitled to maintain the suit. In support of this position, the appellant has referred to 2 *Perry on Trusts, sec.* 474, where it is said, speaking of the powers of trustees, "they cannot begin nor defend any suit without the leave of the Court." A reference to the authorities, cited by the author, and to those referred to by the appellant do not entirely support the proposition as stated in the text. It is doubtless proper in all cases that a trustee, for his own protection shall before commencing a suit consult the Court and obtain its sanction; without this, he takes upon himself

the risk of obtaining from the Court a ratification of his acts, and of being allowed the costs and expenses he may incur ; but the previous order of the Court is not essential to his right to sue. In *Lewin on Trusts, ch. XIX, p.* 513, it is said: "It is a general rule in equity, that what is compellable by suit, or would have been ordered by the Court, is equally valid if done by the trustee without suit, *i. e.* without the sanction of the Court," and *Perry* in *sec.* 476, lays it down "as a rule in equity that a trustee may safely do that without a decree of the Court, which the Court on a case made would order or decree him to do," and for this is cited *Hatton vs. Weems,* 12 *G. & J* , 83. Such is the settled practice in Maryland; the Court does not hesitate to sanction what a trustee does in good faith for the benefit of the trust estate, whether he has or has not first applied to the Court for authority. *Brown vs. Hazlehurst,* 54 *Md.* We refer also to *Stewart & Duffy vs. The Insurance Company,* before cited, in which this Court said: "It was not only the right of the trustees, but their duty, if in their judgment they deemed a suit upon the trustees' bond of their predecessors would be ineffectual or insufficient to secure the trust estate, to proceed at once against the responsible corporation."

The decree of the Circuit Court will be affirmed, and the cause remanded.

*Decree affirmed, and*
*cause remanded.*